| | |
|---|---|
| United States District Court<br>Eastern District of New York | 2:19-cv-00569 |
| Jasmine Brown individually and on behalf of all others similarly situated<br><br>　　　　　　　　　　Plaintiff<br><br>　　　　- against -<br><br>Walmart Inc.<br><br>　　　　　　　　　　Defendant | Complaint |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Walmart Inc. ("defendant") manufactures, markets, distributes and sells products identified as "graham crackers" (the "Products") under its private label brand, Great Value.

2. The Products are available to consumers directly from defendant's more than 5,000 stores across the United States and its territories and from defendant's website.

3. The Products are sold in boxes of 408g (14.4 oz) and contain three separately wrapped packs of crackers.

4. The Products are available in no fewer than Honey and Cinnamon varieties.

5. The identical front and back labels identify the Products "Graham Crackers" and images of rectangular, brown crackers.

6. The "honey" product's front label states "Made with real honey" and contains a jar of honey with a honey dipper, while the "cinnamon" front label states "Made with real cinnamon and contains several rolls of cinnamon stacked upon each other.

1




7. Consumers increasingly seek flours made from whole grain for its numerous health benefits compared to refined white flour, also referred to as unbleached enriched flour.

8. Whole grains are grains that contains the endosperm, germ, and bran, "in contrast to refined grains, which retain only the endosperm. As part of a general healthy diet, consumption of whole grains is associated with lower risk of several diseases."

9. Graham flour is a coarse-ground whole wheat flour, made from the whole grain.

10. The representations of the Products as "graham crackers" is misleading, false, deceptive and unfair because it creates an erroneous impression that graham flour is the predominant or exclusive flour component, as opposed to white flour.

11. This is because the main ingredient in the Products is not graham flour but refined, white flour ("unbleached enriched flour"), indicated on the ingredient list in miniscule font below

2

the nutrition facts on the side panel.

Honey

Cinnamon

12. The nutrition facts of the honey and cinnamon products are presented below.




3

13. It is reasonable for consumers expect the Products' composition to conform to their name because the term "graham" modifies "crackers" such that graham flour will be present in an amount greater than any other non-graham flour.

14. Consumers expect products to have a common or usual name which describes the food in as simple and direct terms as possible, its basic nature and its characterizing properties or ingredients.

15. The name "Graham Crackers" does not reveal the percentage of the food that is graham flour, even though the proportion of this component has a material bearing on price or consumer acceptance and creates an erroneous impression that graham flour is present in an amount greater than is actually the case.

16. The Products are not represented as "Crackers" along with "Made with Graham Flour" or "Containing Graham Flour."

17. Based on the ingredient lists indicating graham (whole grain) flour is present in an amount less than white (refined grain) flour, the Products are more appropriately identified as a "graham-flavored cracker."

18. Dictionaries confirm what reasonable consumers expect when it comes to graham crackers, defining them as "a slightly sweet cracker made of whole wheat flour" and "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour."[1]

19. The Products' name, "graham crackers," is also misleading because the the name is not uniform among all identical or similar products which are designated as "graham crackers," where graham flour is the predominant flour.

---

[1] https://www.dictionary.com/browse/graham-cracker





20. The practice of passing off refined white flour mixed with small amounts of coarser bran (whole wheat) flour is a practice which has existed for over 100 years.[2]

21. While the form of the misleading practice has changed, deceptive representations of the amount of graham flour in products has not.

22. The cinnamon products are further misleading because the front label emphasizes they are "made with real cinnamon" even though the ingredient list contains "cinnamon" and "cinnamon flavor."

---

[2] J.A. Le Clerc et al., "Graham Flour: A Study of the Physical and Chemical Differences Between Graham Flour and Imitation Graham Flours," USDA Bureau of Chemistry Bulletin (164), Apr. 12, 1913

23. This means the cinnamon flavor imparted to the cinnamon products does not derive exclusively from real cinnamon.

24. Reasonable consumers expect that where a product attests to its cinnamon bona fides, that element of flavor associated with cinnamon will be derived from real cinnamon, instead of cinnamon flavoring.

25. The Products contain other representations which are misleading and deceptive.

26. Excluding tax, the Products cost no less than $2.99, a premium price compared to other similar products.

## Jurisdiction and Venue

27. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

28. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

29. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

30. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and in New York.

31. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

32. Plaintiff is a citizen of Suffolk County, New York.

33. Defendant is a Delaware corporation with a principal place of business in Bentonville, Arkansas.

34. In 2016, 2017 and/or 2018, plaintiff purchased one or more Products for personal

consumption, for no less than $2.99 per product, excluding tax, within this district and/or State.

35. Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

36. Plaintiff would purchase the Products again if there were assurances that the Products' representations were no longer misleading.

### Class Allegations

37. The classes consist of all consumers in the following states: <u>all</u>, <u>New York</u> who purchased any Products with actionable representations during the statutes of limitation.

38. A class action is superior to other methods for fair and efficient adjudication.

39. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

40. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

41. Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

42. Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

43. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

44. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

45. Plaintiff(s) counsel is competent and experienced in complex class action litigation

and intends to adequately and fairly protect class members' interests.

46. Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

### New York General Business Law ("GBL") §§ 349 & 350

47. Plaintiff incorporates by references all preceding paragraphs.

48. Defendant's representations are false, unfair, deceptive and misleading

49. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

50. Plaintiff desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type

51. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

### Negligent Misrepresentation

52. Plaintiff incorporates by references all preceding paragraphs.

53. Defendant misrepresented the composition of the Products.

54. Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

55. This duty is based, in part, on defendant's representation that the Products are "Graham Crackers" when graham flour, which is more desirable to consumers, is not the predominant flour type.

56. Defendant negligently misrepresented and/or negligently omitted material facts.

57. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

58. Plaintiff and class members would not have purchased the Products or paid as much

if the true facts had been known, thereby suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

59. Plaintiff incorporates by references all preceding paragraphs.

60. Defendant manufactures, packages, distributes and sells Products which purport to be derived predominantly from whole grain flour (graham flour) as opposed to refined white flour.

61. The Products, by their representations as "graham crackers" warranted to plaintiff and class members that they contained nutrients such as fiber and protein in superior amounts to what they actually possessed, based on if they were primarily from whole grain, graham flour.

62. Defendant warranted such attributes to plaintiff and class members, when this was not truthful and was misleading.

63. Defendant owed a special duty based on its outsize role as one of the largest grocery sellers in the nation.

64. Every week, millions of citizens go to defendant's stores to stock their cupboards and pantries and expect the term "Great Value" to be accompanied by truthfulness.

65. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

66. Plaintiff and class members relied on defendant's claims, paying more than they would have.

Fraud

67. Plaintiff incorporates by references all preceding paragraphs.

68. Defendant's purpose was to mislead consumers who seek products with more nutrients and higher quality ingredients which confer health benefits.

9

69. Defendant's intent was to secure economic advantage in the marketplace against competitors.

70. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

## Unjust Enrichment

71. Plaintiff incorporates by references all preceding paragraphs.

72. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;
3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and GBL claims;
4. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and
5. Such other and further relief as the Court deems just and proper.

Dated: January 29, 2019

Respectfully submitted,

Sheehan & Associates, P.C.

              /s/Spencer Sheehan
              Spencer Sheehan (SS-8533)
              505 Northern Blvd., Suite 311
              Great Neck, NY 11021
              (516) 303-0552
              spencer@spencersheehan.com

              Levin-Epstein & Associates, P.C.
              Joshua Levin-Epstein
              1 Penn Plaza, Suite 2527
              New York, NY 10119
              (212) 792-0046

2:19-cv-00569
United States District Court
Eastern District of New York

Jasmine Brown individually and on behalf of all others similarly situated

Plaintiff

- against -

Walmart Inc.

Defendant

Complaint

Sheehan & Associates, P.C.<br>
505 Northern Blvd., #311<br>
Great Neck, NY 11021<br>
Tel: (516) 303-0052<br>
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: January 29, 2019

/s/ Spencer Sheehan<br>
Spencer Sheehan