**Sheehan & Associates, P.C.**

spencer@spencersheehan.com

505 Northern Blvd Ste 311, Great Neck NY 11021–5101

tel. 516.303.0552     fax 516.234.7800

March 3, 2020

District Judge Joanna Seybert
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re:   2:19-cv-00569-JS-AKT
Brown v. Walmart, Inc.

Dear District Judge Seybert:

This office represents the plaintiffs. On February 25, 2020, defendant filed a letter in anticipation of moving to dismiss the first amended complaint ("FAC"). Defendant's motion is unnecessary based on the Product's plausibly misleading representations and the existence of disputed issues of material fact which have not been resolved.

***Defendant Misapplies the "Common or Usual Name" Requirement***     The     FAC disputes that "graham crackers" is the accurate "common or usual name" for the Products because it gives the impression that "honey and whole grain graham flour are present in amounts greater than is actually the case." FAC, ¶ 71. The name includes two of the ingredients – whole grain graham flour and honey – but fails to mention enriched white flour and sugar. FAC, ¶ 68 citing 21 C.F.R. § 101.18(b) (food name may be misleading if it "suggests the name of one or more but not all such ingredients, *even though the names of all such ingredients are stated elsewhere in the labeling*.") (emphasis added); *Ackerman v. Coca-Cola Company*, No. 09-cv-0395, 2010 WL 2925955 at *31 (E.D.N.Y. July 21, 2010) (denying defendant's motion to dismiss because "FDA has recognized that product names such as 'vitaminwater' can be deceptive in that such names may mislead consumers into believing the listed ingredients are the sole components of a beverage. *See* 21 C.F.R. § 101.18(b).")

Far from giving this term an "idiosyncratic meaning," plaintiffs' interpretation is consistent with established FDA regulations and interpretations which attribute significance to the use of standardized food names as part of a product name. Just as the FDA deemed an imitation mayonnaise misleading to consumers because it did not conform to expectations – a product made with eggs – "graham crackers" misrepresent the amount and percent of whole grain graham flour. *See FDA Warning Letter to Hampton Creek*, August 12, 2015 (finding that a product identified as "Just Mayo" was "misbranded within the meaning of section 403(g) of the Act [21 U.S.C. § 343(g)] in that they purport to be a food for which a definition and standard of identity has been prescribed by regulation, but they fail to conform to such definition and standard."); *see also* 21 C.F.R. § 137.200(a) (identifying as synonyms "Whole wheat flour [, and] graham flour").

Defendant is incredulous that consumers associate "graham crackers" with "whole grain" or expect such products contain "nutrients associated with whole grains, such as fiber." However, if consumers did not make such associations, regulatory authorities would not have needed to take corrective action to prevent deceptive "whole grain claims." *See CSPI Petition to Prohibit Misbranding of Whole Wheat Products and to Promulgate Food Labeling Regulations Concerning Products Made with Whole Wheat*, Docket No. 93P-0227 (Jun. 25, 1993) (citing FDA warning

letters against misleading product names, "HiHo Deluxe WHOLE WHEAT Crackers" and "Krispy WHOLE WHEAT Saltine Crackers").

For example, the FDA has stated that products identified as "whole wheat bagels" and "whole wheat pizza" have a strong tendency to "be construed as meaning that the product[s] consist exclusively of the standardized food, "whole wheat flour." *See Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements*," Docket No. 2006D-0066 ("Whole Grain Guidance") (recommending that whole grain statements not appear on foods that "contain grain ingredients other than those the agency considers to be whole grains."). The FTC also recognized that "[M]any reasonable consumers will likely understand 'whole grain' [claims] to mean that all, or virtually all, of the food product is whole grain, or that all of the grain ingredients in the product are whole grains."[1]

**"*Graham Crackers" is not an Ambiguous Statement***      Defendant is correct in noting that "context is crucial" in establishing whether any ambiguity rises to the level of being misleading. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) ("Courts view each allegedly misleading statement in light of its context The entire mosaic is viewed rather than each tile separately.").

However, to assert that an "ingredient list dispels any potential ambiguity by clearly identifying" the presence and amount of each component would open the door to all manner of deception and is inconsistent with established law. In *In re 100% Grated Parmesan Mktg. & Sales Practices Litig.*, the plaintiffs claimed to have been misled into believing a shelf-stable dairy product *only* contained dairy ingredients. 275 F.Supp.3d 910, 922 (N.D. Ill. 2017). In dismissing the claims, the court emphasized that "consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight." *Id*; *see also Solak v. Hain Celestial Group, Inc.*, No. 17-cv-00704, 2018 WL 1870474, at *13 (N.D.N.Y. Apr. 17, 2018) (implausible to expect that "veggie straws" (1) did not contain vegetables because potatoes are vegetables and (2) contained "whole ripe vegetables").

As the Second Circuit made clear, the presence of an ingredient list is insufficient to dispel ambiguity. *Mantikas v. Kellogg Company*, 910 F.3d 633 (2d Cir. 2018) ("we cannot conclude that these disclosures [ingredient list] on the side of the box render Plaintiffs' allegations of deception implausible"). Defendant disregards that the FAC also pleads that plaintiffs understood "graham crackers" to mean the predominant flour ingredient was whole grain graham flour. FAC, ¶ 1, 41, 46, 51, 64, 75, 76, 110, 114 (allegations that products contain a predominant amount of graham flour); *compare with* Def. Ltr, ECF No. 36 ("the Second Circuit held the plaintiffs had plausibly alleged that the label claim "Made with Whole Grain" suggested whole grains were the predominant ingredient in Cheez-It crackers, when they were not. Here, in contrast, Defendant makes no such claim about the Product's grain content").

**Whether Honey Contributes to the Impression of Higher Whole Grain is Question of Fact**  Defendant claims that the allegation that "honey misleadingly darkens the Product's color,

---

[1] See In the Matter of Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements, Docket No. 2006-0066, Comments of the Staff of the Bureau of Consumer Protection, the Bureau of Economics, and the Office of Policy Planning of the Federal Trade Commission, April 18, 2006.

is devoid of any factual support." This disregards citation to W.K. Nip's survey of sweeteners in bakery products, which concluded that "honey [to] brown[s] easily during baking, adding a natural dark color to baked products such as bread, crackers, and other products." W. K. Nip et al., Chapter 7, "Sweeteners," in Bakery products: science and technology. John Wiley & Sons (2008). In opposition, defendant cites The Mayo Clinic for the proposition that color is not conclusive as to whole wheat content. Though defendant claims a medical website should be afforded greater credibility than a food manufacturing textbook, this is an issue of fact.

>    ***Defendant Fails to Dispute the Natural Flavor Enhances the Honey Flavor***      By failing to dispute the FAC's allegations that the Product's natural flavor ingredient resembles, simulates and reinforces the honey flavor, defendant has tacitly acknowledged its legitimacy. These allegations were confirmed in gas-chromatography-mass spectrometry (GC-MS) analysis received earlier this afternoon which examined the volatile components in the Products. The results indicated the presence of ethyl vanillin at 12.92 PPM and vanillin (27.44 PPM). Exhibit A. Though vanillin is associated with vanilla, 98% of vanillin is derived from other sources like ferulic acid and wood pulp. Vanillin and ethyl vanillin are common enhancers for honey, yet not present in actual honey. Caiyun Liu, et al. "Determination of three flavor enhancers using HPLC-ECD and its application in detecting adulteration of honey." Analytical methods 10.7 (2018): 743-748. This newly obtained data not only supports plaintiffs' claim that the Product's front label should reference the added flavor, but actually would require a statement of "artificially flavored" due to ethyl vanillin being a wholly synthetic substance. Defendant's authorities about the impact of honey on a label claim lack res judicata effect and are not dispositive, especially in light of the newly obtained and non-disclosed artificial flavor enhancer in the Products. *Watson v. Kellogg Sales Co.*, 1:19-cv-01356, Dkt. No. 30 (S.D.N.Y. Oct. 15, 2019) (dismissing claim "honey" flavored graham cracker product was deceptive because the product also contained sugar).

>    ***Plaintiffs' Request for Injunctive Relief is Not Mooted***      Defendant's argument against injunctive relief ignores that "an injunction in connection with a class action is designed to afford protection of *future consumers* from the same fraud. It does this by permitting the plaintiff to sue on their behalf." *Belfiore v. Procter & Gamble Co.*, F.Supp.3d 440, 445 (E.D.N.Y. 2014) (emphasis added). To hold otherwise "denigrate[s] the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated." *Id.*

>    ***Pre-Suit Notice Not Required for Warranty Claims***      Defendant's argument with respect to the lack of pre-suit notice fails to consider the line of New York Cases that create an exception to the notice requirement for retail customers. *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-cv-371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept.28, 2000); See also *Fischer v. Mead Johnson Labs.*, 41 A.D.2d 737, 737, 341 N.Y.S.2d 257 (1st Dep't. 1973) (overturning the Special Term and holding "the prescription of timely notice under the code provisions is to be applied, if at all, differently in commercial and retail sales situations.").

>    For the foregoing reasons, defendant's request for a pre-motion conference should be denied. Thank you.

Respectfully submitted,

 /s/Spencer Sheehan
Spencer Sheehan

**Certificate of Service**

I certify that on March 3, 2020, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☒ | ☐ | ☐ |

/s/ Spencer Sheehan